# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| PANINI AMERICA, INC., § | |
|     *Movant,* § | Case No. 4:22-mc-205 |
| § | |
| v. § | Related to: |
| § | Civil Action No. 4:22-cv-093 |
| WILD CARD, INC. AND DANIEL § | Judge Mazzant |
| ATKINS, § | |
|     *Respondents.* § | |

### ORDER

Pending before the Court is Movant Panini America, Inc.'s Motion to Compel Compliance with Subpoenas (Dkt. #1).[1] Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED in part** and **GRANTED in part.**

### BACKGROUND

On September 2, 2022, Movant Panini America, Inc., the defendant in the underlying litigation, filed a motion to compel Respondents Daniel Atkins ("Atkins") and Wild Card, Inc. ("Wild Card") to comply with subpoenas in the Middle District of Tennessee (Dkt. #1). Movant requested that the court either grant its motion to compel or, in the alternative, transfer the motion to the Eastern District of Texas, Sherman Division for consolidation with the underlying litigation *E. Hanlin Bavely, Chapter 7 Trustee of AAA Sports, Inc. v. Panini America, Inc.*, No. 4:22-cv-00093-ALM (E.D. Tex.). On September 29, 2022, the Middle District of Tennessee granted the motion to the extent it requested a transfer (Dkt. #9), and, on September 30, 2022, the Middle District of Tennessee transferred the case to this Court (Dkt. #10).

---

[1] This motion was originally styled as Movant Panini America, Inc.'s Motion to Compel Compliance with Subpoenas or, in the Alternative, to Transfer the Motion to the Eastern District of Texas. The Middle District of Tennessee, however, granted the portion of the motion that requested a transfer and transferred the motion to this Court. Accordingly, the motion

1

On September 2, 2022, Movant filed a memorandum in support of its motion to compel (Dkt. #2). On September 23, 2022, Respondents filed a response opposing the motion to compel (Dkt. #8). On September 30, Movant filed a reply in support of the motion (Dkt. #11). On November 4, 2022, Movant filed a notice of new evidence in support of its motion (Dkt. #12). And, on November 17, 2022, Respondents filed a response to Movant's notice (Dkt. #13).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are discoverable. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the

discovery is irrelevant, overly broad, unduly burdensome, or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

### I.   Preliminary Matters

Before the Court begins its analysis relating to the substance of the motion, the Court must first address two concerns raised by Respondents. Respondents argue that (1) Movant's motion is improper because Movant did not file a joint discovery dispute statement under Local Rule 37.01(b), and (2) Movant never served the subpoena on Atkins.

First, the Court will not dismiss the motion because of Local Rule 37.01(b) from the Middle District of Tennessee. It is true that the Middle District of Tennessee's Local Rule 37.01(b) requires parties file a joint statement regarding their discovery disputes before filing a motion to compel. It is also true that Movant did not file a joint statement. However, the issue here is nuanced, and departing from the Middle District of Tennessee's Local Rules is necessary. First, this is not a situation where there was ongoing litigation between the parties to this motion. The motion was the first filing in this cause number, and its sole purpose is to enforce subpoenas issued on third parties. Accordingly, and as Movant pointed out, it is not clear that Local Rule 37.01(b) actually applies in this scenario. Second, this case was originally filed in the Middle District of Tennessee, Nashville Division but was subsequently transferred to this Court. And this Court does not have a local rule requiring parties file a joint statement.

Second, Movant argues that Atkins never responded to the subpoena and, therefore, has waived any right to object to the requests for production and could be held in contempt. Movant filed an executed return of service affidavit in support of its contention that Atkins was served with the subpoena (Dkt. #2, Exhibit B). Respondents argue that Atkins was served with a subpoena regarding Wild Card as its agent for service but was not served with a subpoena in his individual

capacity. In support of this, Respondents filed an affidavit in which Atkins swears he was not individually served with the subpoena (Dkt. #8, Exhibit 1).

Additionally, Respondents argue that the return of service has "puzzling irregularities" that require limited discovery into whether Movant executed service on Atkins. According to Respondents, the "puzzling irregularities" are that (1) the process server's "purported" signature is identical in both returns of service, and (2) the return of service had a signature line for a notary public in and for the state of Tennessee but was signed by a notary public in and for the state of Kentucky. In essence, Respondents seem to argue that Movant essentially faked the return of service as to the subpoena served on Atkins. The Court will not entertain this argument.

Proof of service requires filing a statement showing the date and manner of service and the names of the persons served, as well as a certified statement by the server. FED. R. CIV. P. 45(b)(4). Here, those requirements have been met. To refute that proof, a party must offer strong and convincing rebuttal evidence, which requires more than an affidavit simply denying service. *See Curley v. Radow*, No. 00-cv-10956, 2007 WL 2060015, at *5 (D. Mass. July 16, 2007) ("[A]n affidavit [alone] that merely denies service does not overcome a signed return of service."). Atkins offered no proof beyond his own affidavit; therefore, the proof of service is effective.

An individual who receives a subpoena requesting that he or she produce documents must serve a written objection on the party or attorney designated in the subpoena before the earlier of the compliance deadline or 14 days after the subpoena is served. FED. R. CIV. P. 45(d)(2)(B). Lower courts in the Fifth Circuit have consistently held that, absent extension or good cause, failure to serve timely objections to a Rule 45 subpoena or to file a timely motion to quash generally results in a waiver of all grounds for objection. *Traut v. Quantum Servicing, LLC*, 2018 WL 1035134, at *6 (N.D. Tex. Feb. 23, 2018); *Andra Grp., LP v. JDA Software Grp., Inc.*, 312

F.R.D. 444, 448–49 (N.D. Tex. 2015); *La. Generating, L.L.C. v. Ill. Union Ins. Co.*, 2011 WL 6259052, at *2 (M.D. La. Dec. 14, 2011); *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009); *Douga v. D&B Boat Rentals, Inc.*, 2007 WL 677202, at *1 (W.D. La. Feb. 28, 2007).  However, subpoenas duces tecum are discovery devices governed not only by Rule 45, but also by Rule 26.  Therefore, a "court retains discretion to decline to compel production of requested documents when the request exceeds the bounds of fair discovery, even if a timely objection has not been made."  *Schooler v. Wal–Mart Stores, Inc.*, No. 14-2799, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015) (citing *Fifty–Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*, No. 2:05-cv-01059-KJD-GWF, 2007 WL 1726558, at *4 (D. Nev. June 11, 2007); *Lucero v. Martinez*, No. 03-1128, 2006 WL 1304945, at *2 (D.N.M. Mar. 11, 2006)).  Given the Court's broad discretion to conduct discovery, the Court will not force Atkins to provide responsive documents to Movant if it exceeds the boundaries of fair discovery.

**II.     Motion to Compel**

Movant filed this motion to compel, requesting the Court order Respondents to produce responsive documents to the subpoenas served on Respondents on June 22, 2022.  According to Movant, the documents are relevant to the underlying litigation because they relate to the Trustee's claim for actual and statutory damages and Movant's defense regarding the same.  Additionally, Movant argues that these documents may aid in determining the market value of some of the intellectual property at issue in the underlying litigation.  Respondents counterargue that the Court should deny Movant's request because these documents are better obtained from the plaintiff to the underlying action—E. Hanlin Bavely, the Chapter 7 Trustee of AAA Sports, Inc.  Additionally, Respondents argue that the documents requested are irrelevant, and vague and overly broad as drafted.  The Court agrees with Movant.

The substance of the two subpoenas are the same and request Respondents produce documents relating to the following requests:

**REQUEST FOR PRODUCTION NO. 1:** All communications between or among Plaintiff on the one hand and any one or more of the following on the other hand: Wild Card, Inc., Wild Card, LLC, Daniel Atkins, Innovent Brands, LLC, any bankruptcy creditor, and/or any other party that concern products that contain the phrase "Wild Card," "Stat Smashers," and/or either of the logos/images depicted below:

**REQUEST FOR PRODUCTION NO. 2:** All communications between or among Plaintiff on the one hand and any one or more of the following on the other hand: Wild Card, Inc., Wild Card, LLC, Daniel Atkins, Innovent Brands, LLC, E. Hanlin Bavely (Chapter 7 Trustee of AAA Sports, Inc.), and/or any other party concerning any trademark, copyright, or other intellectual property (or derivative work of such property) owned by the bankruptcy estate of AAA Sports, Inc.

**REQUEST FOR PRODUCTION NO. 3:** Documents concerning the authorship, design, creation, development, marketing, or licensing of the phrase "Wild Card," "Stat Smashers," and/or either of the logos/images depicted below:

**REQUEST FOR PRODUCTION NO. 4:** Documents concerning the authorship, design, creation, development, marketing, or licensing of any trademark, copyright, or other intellectual property (or derivative work of such property) owned by the bankruptcy estate of AAA Sports, Inc.

**REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to identify all products you helped design, manufacture, or market that contain the phrase "Wild Card," "Stat Smashers," and/or either of the logos/images depicted below:

**REQUEST FOR PRODUCTION NO. 6:** Documents relating to the Copyrighted Works owned by the bankruptcy estate of AAA Sports, Inc.

**REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to indicate all sales, including number of units sold, dates, and revenue relating to products you helped design, manufacture, or market that contain the phrase "Wild Card," "Stat Smashers," and/or either of the logos/images depicted below:

**REQUEST FOR PRODUCTION NO. 8:** Any agreement, contract, assignment, license, lien or other document reflecting any right by anyone in the Copyrighted Works that Plaintiff alleges is embodied in the products that contain the phrase "Wild Card," "Stat Smashers," and/or either of the logos/images depicted below:

**REQUEST FOR PRODUCTION NO. 9:** Any and all agreements, including license agreements with a sports league or players association, that previously afforded or currently afford any right to you or Plaintiff to make products that contain any trademark, copyright, or other intellectual property (or derivative work of such property) owned by the bankruptcy estate of AAA Sports, Inc. and feature any sports player or league activity.

**REQUEST FOR PRODUCTION NO. 10:** Documents sufficient to represent all marketing and promotional materials (including product packaging) for products you helped design, manufacture, or market that contain the phrase "Wild Card," "Stat Smashers," and/or either of the logos/images depicted below:

**REQUEST FOR PRODUCTION NO. 11:** Documents sufficient to represent all marketing and promotional materials that used the phrase "Stat Smashers" or the Stat Smashers logo depicted below to promote or advertise any product you helped design, manufacture, or market, regardless of whether the product itself actually contains the phrase "Stat Smashers" or the "Stat Smashers" logo.

**REQUEST FOR PRODUCTION NO. 12:** Daniel Atkins has spoken publicly about an individual who created or designed (or at least contributed to the creation or design) of certain allegedly copyrighted works referenced in the Complaint. In the linked podcast episode, for example, Mr. Atkins refers to this individual as "the Guru." Please produce all documents and communications regarding the guru and his involvement in the manufacture, design or marketing of products containing the phrases "Wild Card," "Stat Smashers" and /or either of the logos/images depicted below: (https://anchor.fm/waxpackhero/episodes/Wild-Card-CEO-Daniel-Atkins---WaxPackHeroPodcast-Episode-135-e18b72p/a-a6l5c8q)

(Dkt. #2, Exhibit A pp. 9–12; Dkt. #2, Exhibit B pp. 9–12).[2] The subpoenas make the exact same requests for the production of documents from Atkins and Wild Card, Inc.

### A. The Documents May be Obtained from Respondents

Respondents argue that the Court should not force them to produce the documents requested in Requests No. 1, 2, 4, 6, 8, or 9 because these requests seek documents that are likely to be in the possession, custody, or control of the parties to the underlying litigation. The Court agrees that courts generally prefer that parties "obtain discovery from one another before burdening non-parties with discovery requests." *Scrum All. Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 6559625, at *3 (E.D. Tex. Nov. 9, 2020) ("As Plaintiff seeks correspondence

---

[2] The logos/images referenced in the requests for production are as follows:

 

(Dkt. #2, Exhibit A pp. 9–12; Dkt. #2, Exhibit B pp. 9–12).

8

between Defendants and nonparties, Plaintiff can necessarily obtain that information from Defendants. Instead of burdening nonparties, Plaintiff should obtain the information directly from the source."). However, when a party does not possess the documents, then subpoenaing a nonparty is acceptable. *See id.*

Here, Movant did make requests for production to the opposing party in the underlying litigation that directly mirror Requests No. 1, 2, 4, 6, 8, or 9 served on Respondents. Plaintiff to the underlying litigation, however, responded that, as it relates to Requests No. 1, 2, 8, and 9, "Plaintiff does not have any documents in his possession, custody, or control responsive to this Request" (Dkt. #11, Exhibit B at pp. 4–14). As to the requests for production served on Plaintiff that mirror Requests No. 4 and 6, Plaintiff stated that aside from the complaint and all its attachments, "Plaintiff does not have any documents in his possession, custody, or control responsive to this Request" (Dkt. 11, Exhibit B at pp. 6–9).

Moreover, in Movant's requests for admissions 21, 23, 24, 42 served on Plaintiff, Movant requested information regarding whether Atkins and Wild Card are (1) using the copyrighted design of the Wild Card logo without authority from Plaintiff, the Estate, or AAA Sports, Inc, (2) using, selling, or advertising trading cards bearing the design of the Wild Card logo without authority from Plaintiff, the Estate, or AAA Sports, Inc, (3) using, selling, or advertising trading cards bearing the Stat Smashers logo without authority from Plaintiff, the Estate, or AAA Sports, Inc, and (4) using, selling, or advertising trading cards bearing the Copyrighted Works without authority from Plaintiff, the Estate, or AAA Sports, Inc (Dkt. #11, Exhibit A at pp. 12–14, 21). Plaintiff responded that "Plaintiff objects to this Request to the extent it seeks information that is more readily ascertainable from Mr. Atkins and/or Wild Card, Inc. and of which Plaintiff lacks knowledge" (Dkt. #11, Exhibit A at pp. 12–14, 21).

Likewise, in Movant's requests for admissions 1, 2, and 3 served on Plaintiff, Movant requested information regarding public statements made by Atkins on a podcast about his role in the creation and design of the copyrights-at-issue in the underlying litigation (Dkt. #11, Exhibit A at pp. 4, 5).  Plaintiff responded that "Plaintiff objects to this Request to the extent it seeks information that is more readily ascertainable from Mr. Atkins and of which Plaintiff lacks knowledge" (Dkt. #11, Exhibit A at pp. 4, 5).

The subject matter of requests for admissions 1, 2, 3, 21, 23, 24, and 42 is the exact same subject matter regarding Requests No. 1, 2, 4, 6, 8, and 9 in the subpoenas served on Respondents. That is, not only does Plaintiff state he does not have the records, but Plaintiff explicitly states that Respondents are the individuals that Movant should seek the information from.  A fact that Respondents' attorneys of record must be well aware of since they are also listed as the attorneys of record for Plaintiff in the underlying litigation.  Accordingly, the Court finds Respondents' argument that the Court should not order them to produce the documents because they are "unequivocally obtainable from the Plaintiff" to be disingenuous.

### B.  Vague and Overly Broad

The Respondents argue that the Court should not compel them to respond to the subpoenas because the requests are vague and overly broad as drafted.  Movant responds that the requests are narrow.  According to Movant, it is seeking documents related to the design, manufacture, and marketing of sports trading cards depicting (1) the Wild Card logo previously used by AAA Sports, Inc. and currently used by Wild Card, and (2) the Stats Smashers logo previously used by AAA Sports, Inc.

The Court agrees with Movant that none of the requests are vague.  "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity" and

10

"must explain the specific and particular way in which a request is vague." *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-358, 2015 WL 11170165, at *6 (E.D. Tex. Sept. 2, 2015) (quoting *Heller v. City of Dall.*, 303 F.R.D. 466, 491 (N.D. Tex. 2014) (internal citations omitted)).

Respondents claim it is entirely unclear which documents the requests seek. The Court disagrees. On the contrary, it is unclear to the Court what is vague or ambiguous about "communications . . . that concern products that contain the phrase 'Wild Card,' 'Stat Smashers,' and/or either of the logos/images depicted below" or "[d]ocuments sufficient to identify all products you helped design, manufacture, or market that contain the phrase "Wild Card," "Stat Smashers," and/or either of the logos/images depicted below" (Dkt. #2, Exhibit A pp. 9–12; Dkt. #2, Exhibit B pp. 9–12). Indeed, it is hard to see how any of the requests are vague. Each request specifically lays out the subject matter of the documents or communications that Movant seeks.

Respondents also argue that it is unclear which entity the requests are referring to when the requests seek documents and communications related to the phrase or logo "Stat Smasher" because at least three entities are using or have used the phrase and logo. This argument is unpersuasive as well. The requests are clear that Movant seeks documents and communications relating to the phrases "Stat Smashers" and "Wild Card" regardless of whether the document or communication is about Plaintiff, Movant, or Wild Card, Inc. Accordingly, none of the requests are vague.

As to whether the requests are overly broad regarding the time periods, the Court will assess the requests individually as to each Respondent.

### 1. Wild Card

Movant argues that, because Wild Card was only formed in January of 2021, the requests are limited to the last two years.

11

It is undisputed that courts have "broad discretion when deciding discovery matters," including the limitation of discovery. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011); *see also Robin v. Chartis Prop. Cas. Co.*, 2014 WL 12719193, at *2 (E.D. La. May 14, 2014) ("This Court has discretion to limit the scope of discovery."). Thus, as to the subpoena served on Wild Card, the Court limits the requests served on Wild Card to the last two years, from January 2021 to the present.

### 2. Daniel Atkins

Movant argues that Daniel Atkins has a dual role and, therefore, Movant seeks documents from dual time periods. First, Movant argues that Atkins is a founder of AAA Sports, Inc., meaning Atkins is likely to have pertinent records of AAA Sport Inc.'s use of the copyrights-at-issue from the 1992 to 1993. Second, Movant argues that Atkins is a founder of Wild Card, Inc., which was only formed two years ago. Accordingly, Movant asserts that Atkins should have pertinent records of Wild Card's use of the "Stat Smashers" phrase and logo within the last two years. Furthermore, Movant clarifies that it seeks no documents or communications about the copyrights-at-issue from 1993 to 2021.

As discussed above, courts have "broad discretion when deciding discovery matters," including the limitation of discovery. *Crosby*, 647 F.3d at 261 (5th Cir. 2011). Accordingly, the Court limits the time period of the requests served on Wild Card to no earlier than January 2021 and limits the time period of the requests served on Atkins to the years 1992 and 1993, as well as January 2021 to the present.

### C. Relevance

Respondents argue that the requests are irrelevant to any claim or defense in the underlying litigation and, therefore, the Court should deny Movant's motion. Movant counterargues that the

requests are relevant to Plaintiff's actual damages and Movant's defenses. According to Movant, the requests are relevant to its defense that the copyrights were abandoned years ago and/or have no value. Additionally, movant argues that the requested documents are relevant to establishing Plaintiff's claims for actual damages and statutory damages, as well as Panini's defense regarding the same. Specifically, Movant contends that, if another entity is using AAA Sport, Inc.'s copyrights without paying a licensing fee, then that is relevant to its argument that the copyrights were abandoned. Conversely, if there is a license agreement, then the terms of that agreement are relevant to the copyrights' market value and establishing Plaintiff's damages. The Court agrees with Movant, but only as to some of the requests.

The threshold for relevance at the discovery stage is lower than at the trial stage. *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (internal citations omitted). Although Rule 26(b)(1) limits the scope of discovery to nonprivileged and relevant matter, relevance is construed broadly to include "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (internal citations omitted). Put simply, "[a] request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Id.* (internal citations omitted). Here, the requests for production in the subpoenas are reasonable as to all requests except for Request No. 9.

Plaintiff complaint requests actual damages and any profits made by Movant because of copyright infringement under 17 U.S.C. § 504(b) or, alternatively, statutory damages under § 504(c). 17 U.S.C. § 504(a). Pertinent to the analysis here is Plaintiff's claim for actual damages. Under 17 U.S.C. § 504(a), an infringer of a copyright is liable to the copyright owner for the

13

owner's actual damages and any additional profits of the infringer as provided under § 504(b). Section 504(b) provides that:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work

17 U.S.C. § 504(b).

There is no one set way of determining a plaintiff's damages under § 504(b). Instead, actual damages may be calculated in a number of ways. *See generally* 18 Am. Jur. 2d *Copyright and Literary Property* § 279, Westlaw (database updated Nov. 2022). Some circuits have expressly stated that a copyright owner's actual damages are usually measured by the copyright owner's lost profits. *Id.* Other circuits have expressly stated that the usual or primary measure of recovery of a copyright owner's actual damages is the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement. *Id.*

Despite Respondents' contentions, lost licensing fees are often a measure of damages under § 504(b). *See id.* ("[A] hypothetical license fee is a permissible basis for determining a plaintiff's actual damages arising from an infringement."). In fact, the Fifth Circuit has held that this is a valid method of determining actual damages in a copyright infringement case. *See MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010) ("Under 17 U.S.C. §§ 504(a)(1) and (b), a copyright owner is permitted to recover his own "actual damages," including lost profits and "reasonable royalty rates," or what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material by the infringers."); *see also Durant v. Greenfield & Fortenberry, LLC*, No. 1:16-CV-

965-RP, 2018 WL 3155822, at *3 (W.D. Tex. June 28, 2018) ("[T]he Fifth Circuit adopted the hypothetical license construction as a valid method of determining actual damages in a copyright case" in *MGE*, 622 F.3d at 366); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620 (S.D. Tex. 2007) ("In a copyright infringement case, actual damages may be determined by examining the fair market value of a license authorizing the defendant's use."); *On Davis v. The Gap, Inc.*, 246 F.3d 152 164–68 (2d Cir. 2001) (holding that a reasonable license fee—measured by the fair market value of a license authorizing the defendant's use—may be an appropriate measure of actual damages). Accordingly, any licensing agreement or fee to use Plaintiff's alleged copyrights is relevant to Plaintiff's actual damages and Movant's defenses with regards to Plaintiff's damages.

Movant asserts that Plaintiff abandoned the copyrighted works and waived its rights in the copyrights and, therefore, Movant is not liable for copyright infringement. Abandonment is a valid defense in a copyright infringement case and is akin to waiver. *Malibu Media, LLC v. Martin*, No. CV H-18-4425, 2019 WL 3802678, at *3 (S.D. Tex. Aug. 13, 2019). It used to be the law in the Fifth Circuit that, to establish the defense of abandonment, a party must provide "evidence of intent by the copyright holder to surrender rights in [its] work." *Id.* (internal citations omitted). Specifically, a party needed to prove there was an overt act by the copyright holder "that indicates the copyright owner's desire to surrender its rights." *Id.* (internal citations omitted). However, now "[a] right such as copyright may be waived by inaction." *Veeck v. S. Bldg. Code Cong. Int'l Inc.*, 241 F.3d 398, 409 (5th Cir. 2001) (citing *Sherrod v. American Airlines*, 132 F.3d 1112, 1119 n.5 (5th Cir. 1998)). "Copyright also may be waived as the result of a particular act, even if waiver was not the intended result." *Id.* (citing *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th Cir. 1995)). Evidence that other entities are freely and openly using Plaintiff's copyrights

15

without consent, payment, or recourse is relevant to Movant's defenses that Plaintiff abandoned its copyrights or waived its right to enforce its copyrights.

The only request that is not relevant to any of the claims or defenses is Request No. 9. It is clear that the information sought through Request No. 9 can have no possible bearing on a claim or defense of either party in this underlying action.

Request No. 9 states as follows:

> **REQUEST FOR PRODUCTION NO. 9:** Any and all agreements, including license agreements with a sports league or players association, that previously afforded or currently afford any right to you or Plaintiff to make products that contain any trademark, copyright, or other intellectual property (or derivative work of such property) owned by the bankruptcy estate of AAA Sports, Inc. and feature any sports player or league activity.

(Dkt. #2, Exhibit A p. 11; Dkt. #2, Exhibit B p. 11). As the Court discussed at length in its order on January 9, 2023, licensing agreements with any sports league or players association to use that sports league or player associations intellectual property are not relevant to any of the claims or defenses in the underlying litigation. Accordingly, the Court will not grant Movant's motion to compel as it relates to Request No. 9 in the subpoenas served on Respondents.

\* \* \*

For the reasons set forth in this order, (1) Request No. 9 pertains to documents and discovery that is irrelevant to the underlying litigation and, therefore, the Court will not require production of documents pertaining to Request No. 9 by either of the Respondents, (2) Respondents will produce all documents responsive to the remaining requests in accordance with the parameters set out in this order, and (3) Respondents will file in the record and provide Movant's counsel with a sworn statement, without objection, either that all responsive materials in their possession, custody, or control have been produced, and then making actual production, or that they have no responsive materials in their possession, custody, or control.

## CONCLUSION

It is therefore **ORDERED** that Movant Panini America, Inc.'s Motion to Compel Compliance with Subpoenas (Dkt. #1) is hereby **GRANTED in part and DENIED in part**.

It is further **ORDERED** that Respondents will respond to Request Nos. 1–8 and Request Nos. 10–12 in accordance with this Order within 14 days of the Order.

**IT IS SO ORDERED.**

**SIGNED this 27th day of January, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE